May it please the Court. My name is Brandon Beck, and I represent Guadalupe Castro, the appellant in this case. Your Honors, this case is about the correct interpretation and application of the Mitigating Role Guideline, and there are two reasons why this Court should reverse and remand for resentencing. First, Amendment 794 to the U.S. Sentencing Guidelines Manual was clarifying and therefore retroactive. Second, when the correct interpretation of the guideline is applied in Ms. Castro's case, she qualifies for the reduction. This brings me to my first point, Your Honors, that Amendment 794 is retroactive. Now, at the beginning of this presentation, I would like to note, although it's certainly not binding on this Court, that the government has conceded that Amendment 794 is clarifying and therefore retroactive, and they did so in a 28-J letter filed with this Court on Friday. But because that's not binding on this Court, I would like to examine this particular issue, because I think it is an issue of great importance. The Sentencing Commission issued— What do you mean? Even though they've conceded it, you're going to make the argument that you came here prepared to make, or what? Well, Your Honor, if this Court would be willing to adopt that concession, I would be more than happy to move on to my second point, that it applied to Ms. Castro's case. But in the 28-J letter, the government very clearly stated to this Court, and I received a copy, that their concession is not binding on this Court. And, in fact, in that very letter, they identified a basis for which this Court should not find that it's clarifying and therefore retroactive. So perhaps I'll address that particular basis especially. What they state in that letter and what they've argued in their briefing, Your Honor, is that under the several factors this Court considers when evaluating whether an amendment is clarifying or substantive, the one they highlight in particular is that it overrules prior Fifth Circuit precedent. And, in fact, that's true. It overrules a case called United States v. Franklin decided by this Court in 1998. Now, they treat that factor as if it's dispositive of this issue. And I want to be very clear on the point that if we look at this Court's opinion, United States v. Huff, which is the opinion that lays out those five factors, it simply states that if it overrules prior precedent, it's evidence toward a substantive nature of an amendment. But it goes on to say that some courts have held that overruling prior precedent is substantive. Some courts have held that it's clarifying. And, in fact, in this case, this Court's most recent opinion evaluating whether an amendment is substantive or clarifying, which is United States v. Palacios, decided just a couple of years ago. In fact, that case overruled prior Fifth Circuit precedent en banc, yet this Court still determined that that particular amendment was clarifying. And when the Sentencing Commission first proposed Amendment 794, it did so for two reasons. It was based on a study, and it found that the mitigating role guideline was being applied inconsistently in drug cases, and it was being applied not frequently enough generally, but specifically in economic cases. And it provided a reason for the amendment. And in that reason, the Sentencing Commission... Let me just ask you this. You said that she qualifies for it, and it didn't seem to me that the district court was saying that there was some disqualification, like there was some barrier, like with the safety valve, sometimes there's a barrier to applying it because you don't meet one of the tests. I think the district court was just saying, you didn't persuade me by preponderance of the evidence that I should grant you this reduction. And so why would that matter, then, even if we accepted that it was clarifying? Why wouldn't we simply affirm because the district court just didn't find you persuaded the court? Well, Your Honor, the reason that we would send it back to the district court is because the district court, in making that statement, was applying the incorrect interpretation of the mitigating role guideline. And I want to be very clear on this point. I think this is a very important point. The quote from the district court from the record on page 102 is, quote, I am not persuaded that the defendant has carried the defendant's burden to prove the lower participant category. But the question I would ask is, what in the district court's mind is the defendant's burden with respect to the minor participant category? Now opposing counsel's briefing would seem to imply that the district court did said something along the lines of, I've considered it under the 2014 version, I've considered the amendment, and I find that she doesn't qualify either way. That's certainly not what the district court did here. And we know this because the district court adopted the addendum to the pre-sentence report, and that's found on page 146 of the record. And here's what the addendum says about the relationship between the 2014 and 2015 guidelines. It starts first and foremost by saying we're applying the 2014 guidelines here. It then points out that the 2015 guidelines have not gone into effect yet. It then states that the courier in this case played an integral role, and that's the very language rejected by amendment 794. But here's the really important point. This is what the pre-sentence report addendum states, and this is what the district court adopted. It says in this case the court may consider the anticipated changes to the guideline and structure a reasonable sentence through a variance pursuant to section 3553A if the court finds a variance to be appropriate. So the district court adopted a framework that you can't go down under the guidelines if the person plays an integral role. Instead, if you want to do something with that information, you have to go outside of the guidelines into the 3553A factors, because in this case Ms. Castro played a, quote, integral role. That is the very analysis rejected by amendment 794, and that's the very analysis applied in this case. Now, it's not to blame the district court. It's true that amendment 794 had not gone into effect, but what we're asking this court is an opportunity to conduct this analysis under the correct factors put forth in amendment 794. So I guess... Why do you believe, if it goes back and the court conducts that analysis, that it will matter? Well I think it matters in a couple different ways, Your Honor. First of all, I think that Ms. Castro qualifies for the reduction under the mitigating role guideline in section 3B1.2. That's number one. Number two, if she were to receive that reduction, that would dradically... Is she minor, minimal, or in between? Your Honor, that's ultimately for the district court. It's my opinion that she's minimal, but at least minor. So I think minor is an easy call in this case. I think an argument can be made here for minimal. In fact, since you asked that question, I want to reference in particular the definitions of minor and minimal participant, and then we can talk about how we would apply the facts of Ms. Castro's case under the new factors in 794, and why she would qualify there. Now the definitions between minor and minimal are kind of connected to each other. A minor participant is someone who's less culpable than other participants, but could not be described as minimal, right? And then the minimal participant is the person who, because of their lack of knowledge and understanding of the scope and structure of the enterprise, is indicative of a role as a minimal participant. Now, in this case, Ms. Guadalupe Castro... I'm supposed to understand that? I mean, I'm supposed to understand those definitions, the sharp difference between those definitions. Exactly, Your Honor. It's certainly on a gradient, and there's certainly a gray scale here. But I will mention that minimal... That's kind of circular in a way. It is. It's kind of like saying we're going to provide a definition of minimal, and then minor is everything that's up there, but not quite minimal, right? That's how they're interconnected. But it mentions understanding and scope of knowledge, in particular in the minimal participant definition. And I'll say, Your Honors, part of the problem with these definitions is addressed by the Sentencing Commission by providing a lengthy commentary to assist courts in applying these. Of course, the problem is that courts weren't applying it as often as the Sentencing Commission intended, and they provided, quote, additional guidance in the form of these factors. Now, the five factors the Sentencing Commission recommends are... The first one deals with the scope of a person's understanding. The second is the level of their planning in the criminal enterprise. Third is decision-making authority. Fourth is participation. And fifth is what is the defendant's benefit. Now, in this case, we have a drug trafficking scheme, and Ms. Guadalupe Castro, within that scheme, plays the typical drug mule. And that's the person that is the lowest-level person within the conspiracy. And so the question would become, What do we know about her level of understanding or her level of benefit? We actually have all of this information, and it can be found in the record through Officer Brown's testimony, and it can be also described in the pre-sentence report by U.S. probation. So here was her understanding. She only knew things through her own personal experience, personal knowledge. So she knew, number one, the cities she was driving between. She knew where she began and where she ended, and she could recognize the person that she delivered the drugs to. That's all she knew in this case. Somebody had to have a connection with them on the other end, didn't they? Yes, she knew she could recognize the person she was delivering the drugs to. So the pre-sentence report describes... I mean, the other end, where was she getting the drugs? She knew where she was getting them, didn't she? She knew where she was getting them in the sense of the location she was getting them. I'm not sure that she even recognized the person that gave them to her, but presumably, Your Honor, it would be a reasonable inference that she at least saw another human being that would have loaded the drugs in the car. But we know that her level of understanding certainly didn't even extend to what type of drugs she was transporting. In the instant case, she thought she was transporting cocaine. As it turned out, she was transporting heroin. And if you look at her participation in planning of the organization, she had no planning authority or discretion. In fact, one time, her vehicle broke down in the middle of the highway... Let me ask you just a very basic sort of appellate question, which is, you're basically arguing to us that the district court could have arrived at the same sentence even with giving her minor or minimal participation credit. However, that the district court applied the wrong legal standard because the district court didn't apply Amendment 794. But you all never got a direct ruling on that. The judge simply said, I'll deal with the objection. I'm not persuaded the defendant has carried the defendant's burden to prove the lower participant category. No one said, Judge, are you applying Amendment 794 or are you not? And so, to me, this statement, and I just read the PSR response to the objection, it's a little bit vague, if you ask me. So I don't see here where the judge clearly ruled on the applicable law that we then can say, okay, that's an error of law or it's not an error of law. So how do we even know what the judge, was the judge applying purely the 2014 guideline? Was the judge applying the 2014 guideline with understanding and clarification from 794? Did the judge think 794 made no difference in this case? We don't know that. So how can we say the judge made an error of law? Your Honor, two points in response to that observation. The defendant, when the pre-sentence report does not apply the mitigating role guideline, the defendant, and the defendant objects to the pre-sentence report, it's the defendant's burden to carry that objection to change the judge's mind. When the judge says the defendant did not meet their burden, that is a ruling on the defendant's objection because the defendant has the burden. Oh, you got a ruling, but we don't know what law the judge applied because there was no further discussion of that. I'm not saying that you didn't make an objection or the judge didn't rule on the objection, but you have made the statement that the judge applied the wrong legal standard, and I'm not seeing that. So that's what I'm asking about. It's a very specific question. Yes, Your Honor, and I want you to be satisfied with my answer. On the very next page of the record, and I believe it's page 103, and I'm saying that from my memory, the judge adopts the pre-sentence report as affected by the addendum. So the judge's findings are the addendum to the pre-sentence report with respect to the mitigating role guideline. That pre-sentence report addendum states the very first sentence, using the current 2014 sentencing guidelines, the defendant does not qualify for mitigating role reduction. That's the finding of the district court, or that's the finding the district court adopted. The pre-sentence report then says if you want to give her benefits, you have to go outside of the guidelines. But the pre-sentence report doesn't take a position on whether 794 is clarifying or substantive. It just says if you want to do this, you can do the variance. So this exact legal point that you're making, which is really specific, I don't see that we got a ruling on that. Oh, I see your question. Well, it's not the district court's role to rule on whether the amendment is clarifying or substantive. It's the district court's role to apply the guideline as the sentencing commission intended. Now the district court went by the 2014 guidelines, which were in effect at the time. And so the district court, what I'm saying, Your Honor, is I can't. You have a red light and you can complete your answer whenever you have rebuttal. Thank you, Your Honor. We'll hear now from Ms. Hayworth, U.S. Attorney's Office. May it please the court, Gail Hayworth, on behalf of the United States. Now even if this court considers the amendment, Castro fails to show that the district court clearly erred in denying the mitigating role reduction. She claims that contrary to the amendment's instructions, the district court denied the reduction solely because she played a necessary or indispensable role in the offense. But the record just doesn't bear that out. The record shows that the district... Now is there a clear ruling on whether 794 is being applied as clarifying or substantive? Whether we had to have one or not, did we have one in the district court? No, the defendant never asked for a clear ruling and we don't have it. But we don't need to know, we don't need to have that ruling to know that the district court considered these factors and these facts raised by the defendant. Because even under the law before the amendment, the district court was required to consider the broad context of the offense and a variety of factors. It was a factually intensive inquiry. And so every factor that the defendant's raising to show I'm entitled to this mitigating reduction, I'm showing you the broad context of the offense, obviously the district court considered that and said no, even under the preamendment law, you're not entitled to that. So even though we don't know whether we applied preamendment law or postamendment... To me, and I don't want to beat this to death, but the potential legal error, if you will, is thinking he had to deny the mitigating adjustment because of the indispensability of Ms. Guadalupe Castro's conduct. And if he thought he had to do it, then we potentially have a legal error. Anything else I would agree is discretionary and you're good to go. So that's why I'm zeroing. At least in my mind, that's the sort of appellate legal error question. And that's why I'm zeroing in on it. Others may have a different view. We know that the court didn't do that, one, because of the record. It says nothing that he's denying it solely because of that. And Fifth Circuit law doesn't make that a determinative factor. The Commission never cited any Fifth Circuit law that made that a determinative factor. And you should, if you go back and you look at the law that it's... Other than the integral role determination, what else did the judge cite as a basis for denying the mitigating? Well, after it had reviewed the defendant's arguments to the PSR, which listed a bunch of facts, a bunch of factors that the court can consider, and said, after considering that, you just haven't shown me that you're entitled to this mitigating role reduction. You just not have satisfied your burden, which was implicitly referencing the arguments the defendant had made. And then in addition to that, the PSR addendum, contrary to the Defense Counsel's arguments, didn't just say, we're denying this reduction solely because we think you provided an integral role. It said, we don't think you qualify based on your participation and involvement in this conspiracy, which the PSR indicated, traveling thousands of miles, making multiple trips for the DTO, delivering kilogram amounts of heroin, and returning drug proceeds back to the DTO, and getting a license plate for a DTO vehicle. And more than just based on her participation and involvement, it also invoked the authority in the government's response to the defendant's objections, which was specifically Wayne Rostrow and Thomas, and Thomas' peripheral test. And Thomas' peripheral test is that if the defendant must do enough less so that they are peripheral to the criminal activity. And a prior panel of this court in Cumbie said that that test focuses on whether or not the defendant was culpable, not on whether or not the defendant provided an essential or necessary role. Moreover, the very language of that test, the defendant must do enough less, indicates that the inquiry is not a binary one in which the defendant is either necessary or unnecessary, but one that looks at the matter of degree, to the defendant's involvement in the offense. Moreover, the facts of Thomas further reinforce this, because in that case, the defendant picked up cocaine, packaged it, and gave it to couriers, but, and he also did it on a daily basis. And focusing on the defendant's daily role, the court said, even though you did enough in the, I mean, did less in the task that you performed, you didn't do enough less so that you were peripheral to this criminal activity because you were involved in it daily. And the addendum then applied this Thomas test when it said that Castro not only committed drug-crafting crimes, but she did it on multiple occasions, and that's why she's not peripheral. In short, the addendum found that Castro was not peripheral based on her involvement . . . So you're saying multiple occasions would make it non-peripheral? Even if she's doing the same thing, picking something up from, at one location, driving it to another location, being paid a specific amount, predetermined amount for the delivery. If you just keep doing that over and over again, then it's non-peripheral. The activity becomes more significant if it's repetitive. I think the Thomas test is looking at what you did and how often you were doing it. If you're constantly involved, if you're enmeshed in this conspiracy, we're not going to say you were on the outskirts, that you were peripheral, if you were enmeshed in it. And she was doing this multiple times over the course of only three months. And so the addendum said she's not peripheral, in addition to considering what she actually did, the full context of what she actually did. The hard part, to me, with applying this amendment going forward is going to be this issue of who are we comparing her to? Because every drug conspiracy of every size is going to have some person at the top, and then it's going to have the low-level delivery guy, and then, you know, la, la, la. And who are we comparing her to? The other low-level delivery guys or the kingpin, if you will. And so isn't that kind of the problem? I mean, here the judge directly compared her to Uribe, where they were pretty similar and gave similar sentences, which is kind of what district judges are supposed to do. They're supposed to give similar sentences for similar offenses, assuming a similar criminal history and so on. I mean, if you compare anybody, really, to the very top guy back somewhere that's running the cartel, everybody's going to be minor compared to that guy or woman, whoever's running the cartel. Correct. What the district court did here is compare her to people that were specifically involved in the activity she was involved in. So there was a defendant that looked— Isn't that what he's supposed to do? That's what he's supposed to do. And in that group, she's pretty average. Yes. I mean— So compared to the owner of a cartel, maybe not, but that's not who we're comparing her to. Correct. So let me be clear. So you're saying she's only to be compared to other drivers and not in the criminal activity? Because doesn't the clarifying language say others in the criminal activity? Not other—I'm sorry. Not other drivers, Your Honor. She's supposed to be compared to other participants in the activity. So she drove to the supplier in El Paso. There was someone there that loaded the car. She drove the car to Fort Worth. There was someone that directed them to a residence, another person that unloaded the car there, and another person that bought a car when it broke down. So all these participants involved in the specific activity that she was involved in. The court compared her with them and felt that she had— So you are saying you can call out different segments of the criminal activity and she's only to be compared to those in that particular segment of the activity? She's to be compared with the co-participants in the criminal activity for which she was held accountable for. And in this case, what is that? That's the five total trips, four delivering drugs from—four of them to Fort Worth, one to Albuquerque. In those—looking at those four trips, look at the co-participants involved in that. Was she substantially less culpable than that? So the co-participants involved in this activity would be the person who put the drugs in the trunk, put the drugs in the car, the one who drove it, and then the one who unloaded it, and then we're done. So all the people who are selling it in Fort Worth or wherever it's being delivered, we're not talking about those people. The average participant. Who is the average participant? That's why we leave it to discretion of the district court. Is this on de novo review in terms of whether this 794 applies or is this on abuse of discretion of the district court? Because whether or not it's clarifying a retroactive is a preliminary legal question, that would be for you to decide to know, though. But we don't—I mean, I don't want—again, I don't want to beat this—we don't know what the district court really ruled on that, per se, because the court wasn't asked to say, I'm applying—even if I'm applying 794, she loses, or I'm not applying 794. Was 794 not even enacted at that time? It wasn't, Your Honor. Well, it was enacted, but just not effective. I mean, they knew about it. It was pending, and unless Congress— They knew about it. Correct, yes. I mean, the judge wasn't unaware of it. It was argued. Right. The question was, was the judge saying, I can't apply 794 because it's not been effective yet, or even applying 794 doesn't make any difference to my analysis because she's still an average participant. That's what we don't know, or at least you all haven't pointed me to anything that would really clarify that, to use the term. We don't really—we don't know if he found that amendment to be clarifying so that it's going to apply in the mitigating role analysis, but he would have considered those factors under the preamendment analysis. He would have considered those facts under the preamendment analysis, so it didn't really affect that analysis. Moreover, if you believe that he only applied it or considered the amendment as far as a variance, then it would have been harmless because he was considering those factors and facts in a variance, in the variance stage, and the defendant even—the defendant asked the court to consider it as a variance. The PSR indicated that the district court could consider it in determining the 3553 factors, and then the defendant at sentencing actually argued those factors again in favor of a variance. So whether or not the court considered it under the mitigating role analysis, which I believe he did, looking at the record, or under the variance, he considered it and it didn't—she got the sentence she got. Okay, going back to the question of what is the criminal activity, so she was charged with the conspiracy to possess with intent to distribute a controlled substance. So that's the criminal activity. Right. So then the question is, I guess, you know, there's always, I imagine, some ultimate supplier, you know, the person in El Paso has it in his house, got it somewhere, et cetera, et cetera. Are we comparing it just to the people involved in the conspiracy that we know about, or are we imagining a factory back somewhere with a CEO, criminal CEO of a cartel, and having to compare it to that? I think that's the question we're trying to get at on criminal activity. The guideline says you compare it to the criminal activity that she was held responsible for. If you want to include the actual people selling the drugs of the amount that she's delivering, then that's for the defendant to argue for the court. She never argued that here. She argued these participants that the court did consider, and the court just found that she didn't show that she was substantially less culpable than those people. And based on the record, there's nothing implausible about what the court found in that consideration. Okay. The amendment, I mean, essentially it gives the court factors to consider, but it doesn't dictate a result. And here the court considered those factors, and in light of the record showing her multiple trips, delivering substantial amount, kilogram quantities of heroin on multiple occasions across thousands of miles, returning drug proceeds, and picking up a license plate for a DTO vehicle, considering all the other participants that the defendant argued, the And if the court has no further questions? Thank you very much, Ms. Hayworth. Mr. Beck will hear from you. Yes. I'm going to call the adjudicant. May it please the Court. Judge Haynes, a question that you've been struggling with, or you've been asking us to struggle with in this proceeding, is what did the judge do? And I've mentioned this before, the first thing that the judge did here is applied the 2014 interpretation of the guidelines, the non-clarified version. But it's important for me to state, or it's important to understand that when an amendment is clarifying, it's not saying what the new law is versus the old law. It's saying what the old law always was. It's saying what the sentencing commission intended from the beginning. So whether the district court had applied 2014 or 2015, we know it was 2014 in this case, the interpretation is incorrect, because it's inconsistent with the interpretation the sentencing commission intended. And at the time, it's certainly true, as opposing counsel noted, Amendment 794 was not effective, but the court knew about it because the defendant objected and mentioned 794. If we had not mentioned 794, it would be a waived objection, perhaps, and we'd be under plain error. But here, the judge applied 794, in which case the Fifth Circuit was advising that this court was advising that crucial or integral were two considerations for the court. That is not consistent with the sentencing commission's intent. We know that. The sentencing commission has been very clear on that point. And because of that, it's important that we go back and allow the district court to evaluate this in light of Amendment 794. Your argument, essentially, is that all the delivery people are always going to be minor participants, because there's always going to be sort of the kingpin and the guy that has the big truck full of it and so on and so forth. And these people that are delivery drivers are always going to be minimal, in your view. And I don't see it as that limiting. I mean, that's why we have district courts to sit there and assess the different factors in the particular case. And the judge did that here. Well, respectfully, Your Honor, the judge did not do that here. The judge adopted a finding that her role was crucial or integral to the offense. And that's certainly true because drugs can't transport themselves. But the sentencing commission said, wait a minute. We don't look at that. We look at their role, their knowledge, and their understanding with respect to the average participant. You can consider that, can't you? Excuse me, Your Honor? You can consider that. It's just not a determinative factor. It's not a factor at all, according to the sentencing commission. So it certainly would not be a determinative factor. But to answer your question, Judge Haynes, the typical drug mule in a large criminal conspiracy, yes, it's our position, would almost always qualify for the minor or minimal participant category. And we think that's consistent with the sentencing commission's intent. The sentencing commission believes that this is not being applied consistently, but also not nearly often enough, noting that some jurisdictions are applying it in the 90-plus percent and some only in the teens. And what the sentencing commission has done is provided additional guidance to back district courts off of an analysis that was preventing the mitigating role reduction, and then adding factors to help us understand. And when we look at these factors— They want to give it to all the delivery people, and they can just say so. You know, if you're just the delivery guy getting paid to some certain guy or woman, getting paid to some They can say that. They know how to do it. They do it all the time. They didn't do that. They've got a lot of shoulda, woulda, coulda, maybe, might, consider this, that, and it's still very fluid and very vague. And that's where district court discretion is integral, if you will, because we aren't in a position to come in and look at these people and assess that kind of information. Yes, Your Honor, but it's a clear abuse of discretion for a district court to apply the Here, Your Honor, the reason the sentencing commission, I think, didn't make a bright-line rule saying all drug mules qualify for a minor mitigating role reduction is because there are some atypical circumstances. But the typical drug mule fits all five of these characteristics in such a way that they would apply for the minor or minimal participant category. And for these reasons, Your Honors, we ask this court to find the amendment clarifying and reverse and remand for resentencing. Thank you. Thank you, Mr. Chairman. We'll call the next case of the day, and that's United States of America v. Omnicare.